IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18CR022 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| PHILLIP DURACHINSKY, | ) | <u>GOVERNMENT'S RESPONSE IN</u> |
| | ) | <u>OPPOSITION TO DEFENDANT'S</u> |
| Defendant. | ) | <u>MOTION FOR DETENTION HEARING</u> |
| | ) | <u>ORAL HEARING REQUESTED</u> |

Now comes the United States of America, by and through its counsel, Bridget M. Brennan, Acting United States Attorney, and Daniel J. Riedl and Michael A. Sullivan, Assistant United States Attorneys, and Jeff Pearlman, Senior Counsel for the U.S. Department of Justice, and hereby responds in opposition to Defendant's Motion for Detention Hearing.

Phillip Durachinsky ("Durachinsky" or the "defendant") has offered no change in circumstances to rebut the statutory presumption that no conditions or combination of conditions can reasonably assure his appearance in this case or the safety of the community. Durachinsky acknowledges in his Motion, in the first paragraph, in the second sentence, that he does not wish to be released if he cannot access "a computer and/or the internet." Yet Durachinsky is a sophisticated cybercriminal for whom "a computer and/or the internet" is the weapon of choice, and it would be unsafe to the community to release Durachinsky for the purpose of access to "a computer and/or the internet," much as it would be to release an incarcerated individual charged with a firearms offense for the purpose of accessing firearms.

As the Indictment and evidence in this case demonstrate, Durachinsky is a sophisticated cybercriminal who spent more than thirteen years hacking into thousands of computers (using

the internet) and using them to spy on and steal data from their unsuspecting users, including taking pictures of individuals in their most unguarded moments, including but not limited to taking sexually exploitive pictures of children. Durachinsky hacked thousands of computers around the world, including those owned by local, state and federal governments, a police department, schools, companies and individuals. His malware enabled him to control a victim's computer by, among other things, accessing stored data, uploading files to a victim's computer, taking and downloading the user's personal photographs, logging a user's keystrokes and turning on the camera and microphone to surreptitiously record images and audio recordings. Even after Durachinsky produced child pornography with the malware, he continued to exploit his victims and find new ones. He poses a great risk to this community and any community reachable by the Internet, and he has both the incentive and the means to flee. The U.S. Code presumes such, and Durachinsky did nothing to rebut such presumption at his initial appearance, nor has he offered any change in circumstance to rebut such presumption now.

Moreover, Durachinsky is charged with several offenses, some of which carry mandatory minimum sentences. Count 3 carries a mandatory minimum 15 years and a statutory maximum sentence of 30 years. Counts 7-10 carry a mandatory minimum two-year consecutive sentence. Thus, if convicted of all counts, Durachinsky faces at least 17 years and up to decades in prison. For all the reasons set forth below, Durachinsky remains a danger to the community and a serious flight risk and should continue to be detained pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A).

## BACKGROUND

On January 24, 2017, a criminal complaint (Case No. 1: 17MJ9011) was filed against Durachinsky, charging him with Damaging Protected Computers, in violation of 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B).

The defendant appeared before United States Magistrate Judge William H. Baughman on January 25, 2017, after having been arrested pursuant to the complaint. At the time of the initial appearance, Defendant waived his probable cause and detention hearing, was remanded to the custody of the U.S. Marshal's Service, and the matter was bound over to the grand jury. (R. 3: Minutes Initial Appearance on Complaint; PageID 12-13) (R. 4: Waiver of Detention Hearing; PageID 14); (R. 5: Waiver of Preliminary Hearing; PageID 15). A Grand Jury on January 10, 2018, issued a sixteen count indictment as to Durachinsky, charging him with, among other charges, Damaging Protected Computers, Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).

Defendant now seeks a detention hearing pursuant to 18 U.S.C. § 3164. However, in his motion, he fails to allege any facts that bear on his risk of flight or the danger he presents to the community. Instead, he asks this Court release him because (1) this case has become very complicated, due to the nature of the charges and the volume of evidence; and (2) he was not aware of the circumstances of the COVID–19 Pandemic. "Had Defendant known that both of the aforementioned circumstances would have occurred, he most certainly would not have waived his Detention Hearing back in January 2017." (R. 96: Motion; PageID 837-38). The fact that this matter is very complicated was well known to everyone involved, especially to Durachinsky who spent 13 years victimizing thousands of innocent men, women and children through their computers. Adding insult to the injury he inflicted, Durachinsky indicates that he does not want to be released unless **no restrictions** are placed on his ability to use a computer or internet for the purpose of doing legal research or preparing for trial. (Id, PageID 838).

The government does not take the COVID-19 concerns of inmates lightly, but the defendant's stated condition precedent for his release makes clear the defendant does not actually assert that COVID-19 is relevant to his incarceration, other than that it may have delayed the trial. Not coincidentally, the defendant has failed to raise such a concern with the Court in the year since the pandemic started or explained the changed conditions during his incarceration that would warrant such a concern now. Nor has the defendant alleged in the Motion that COVID-19 itself has somehow burdened his ability to prepare for trial. Instead, the apparent basis for the defendant wanting to be free is to access computers and the internet.

Nevertheless, the pandemic has impacted the trial status of this case, so it is understandable that this Court has granted a limited referral to the Magistrate Judge "to conduct a pretrial detention hearing … in light of the changed circumstances caused by the ongoing pandemic." (R. 99: Order, PageID 861). But as set forth below, because the defendant cannot show how the ongoing pandemic has any bearing on whether he will flee or continue to be a danger to the community, he cannot overcome the presumption of detention and his motion should be denied.

## ARGUMENT

### A. Reopening the detention hearing

Title 18, United States Code, Section 3142(f), states that a detention hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community. 18 U.S.C. § 3142(f).

Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing. United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir.1991) (*per curiam*) (affirming district court's refusal to reopen hearing where defendant's evidence consisted of affidavits and letters from people who knew him attesting to his likelihood of appearing and non-dangerousness; "this information was available to appellant at the time of the [original] hearing"); United States v. Hare, 873 F.2d 796, 799 (5th Cir.1989) (affirming refusal to reopen hearing because "testimony of Hare's family and friends is not new evidence").

Even if a basis exists to reopen the case, attention must be turned to the use of the word "may." Use of the word "may" indicates discretion on the part of the district court. United States v. Watson, 475 F. App'x 598, 601 (6th Cir. 2012). If the court finds that new information exists, then the judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

    Here, although the District Court ordered a detention hearing, the COVID-19 pandemic is not a change in circumstances sufficient to justify Durachinsky's release. Durachinsky has offered no evidence of any physical condition that makes him particularly vulnerable to the effects of COVID-19. Pure speculation about contracting COVID-19 and potentially developing serious complications does not justify release. *See* United States v. Peaks, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020); United States v. Shah, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020). Indeed, many courts have held that the risk of contracting COVID-19 does not amount to a material change justifying release. United States v. Shives, 1:20CR186, R. 81, Order, PageID 589-93) (N.D. OH. Jan. 22, 2021); United States v. Tawfik, 2020 WL 1672655, at *2 (E.D. Mich. Apr. 6, 2020); United States v. Bothra, 2020 WL 2611545, at *1 (6th Cir. May 21, 2020) (non-precedential). The defendant's statement that COVID-19 is only a basis for his release because it has impacted his trial date, does not put him in a different posture than thousands of cases nationwide and many in this district.

    **B. The 18 § 3142 factors continue to justify detention.**

    The factors to be considered in determining whether to release a defendant pending trial include: (1) the nature and circumstances of the offenses charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Pursuant to 18 U.S.C. § 3142(e)(3), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of a defendant as required and the safety of the community if there is probable cause to believe that a defendant committed an offense involving a minor victim, including sexual exploitation of children in violation of 18 U.S.C. § 2251(a), for which Durachinsky is indicted here. Moreover, for pretrial detention, the lack of reasonable assurance of **either** the defendant's appearance or the safety of others in the community is sufficient; both are not required. United States v. Ferranti, 66 F.3d 540, 543-44 (2d Cir. 1995).

The presumption of detention imposes on the defendant only a burden of production to produce some evidence that he does not pose a danger to the community or a risk of flight. United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010). The defendant's burden of production is not heavy, but he must introduce at least some evidence that he is not a flight risk or a danger to the community. Id.; *see also* United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991). Even if the defendant satisfies the burden of production as to either risk of flight or danger to the community, the presumption does not vanish simply because a defendant comes forward with evidence to rebut it. Rather, "the rebutted presumption retains evidentiary weight." United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Gray, 20 F. App'x 473, 475 (6th Cir. 2001). The *Stone* Court explained that this reflects "Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." Stone, 608 F.3d at 945. Therefore, the defendant "should present all the special features of his case that take it outside the congressional paradigm." Id. at 946 (internal citations and quotations omitted). The defendant's concern over delay in his trial because of the pandemic, does not take this case outside of the congressional paradigm.

7

Assuming, *arguendo*, Durachinsky is able to rebut the presumption for detention despite the complete lack of evidence contained in his motion, risk of flight must be proved by a preponderance of the evidence, while dangerousness must be shown by clear and convincing evidence. United States v. Hinton, 113 F. App'x 76, 77 (6th Cir. 2004). In assessing the risk of flight presented by the defendant, the Court must assess factors including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; and (3) the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(1)-(3). As set forth below, each of these factors weighs in favor of detaining the defendant.

### 1. The nature and circumstances of the offenses charged, including whether the offense is a crime of violence or involves a minor victim.

Durachinsky offense involves minor victims, as well as thousands of adult victims and several government institutions including schools. Durachinsky created and propagated his own malware, which was later named "Fruitfly" by security researchers. "Fruitfly" malware was unusual because it was primarily used to infect computers running Apple's macOS X operating systems in addition to Microsoft Windows computers. Once a computer was infected, the operator of the malware could gain unauthorized access to documents, photos, videos, and other files on the infected computer. Further, the Fruitfly malware could be used (and was frequently used) to covertly turn on the camera and microphone on an infected computer to record and transmit photographs and videos of innocent victims (including children) during their most private moments. Thousands of computers were infected with the Fruitfly malware, resulting in the illicit and invasive recording and transmission of millions of photographs and videos of victims. The defendant had so many victims, and so much of the fruits of the malware, that he even hacked into other computers he identified as having significant storage capacity so he could store images and videos of his victims at those locations. In sum, Durachinsky has committed a reprehensible violation of privacy—infecting thousands of computers with a virus in order to steal private data and secretly turn on the cameras

and microphones on those computers so that he could watch, record, and archive unwitting adults and children in a state of undress and/or engaged in sex acts. He has victimized adults and children around the world – all from the comfort of his own home – where he would like this court to allow him to return.

      2.      **The Weight of the Evidence against Defendant.**

The weight of the evidence supports detaining the defendant. This factor relates to the weight of the evidence of dangerousness or risk of flight not to the weight of the evidence of the defendant's guilt. *Stone*, 608 F.3d at 948. Here, the evidence proffered during the suppression hearing shows that Durachinsky created and propagated his own malware, which was later named "Fruitfly" by security researchers. Thousands of computers were infected with the Fruitfly malware, resulting in the illicit and invasive recording and transmission of millions of photographs and videos of victims. (R. 79: Transcript; PageID 448-662); (R. 80: Transcript; PageID 623-768). If released, and given access to an Internet-connected computer, Durachinsky would pose a great risk to this community and every community accessible by the Internet. Further, Durachinsky is facing decades in prison – with a minimum of 17 years - giving him a huge incentive to flee.

      3.      **The History and Characteristics of Defendant.**

While Durachinsky has no prior criminal record, the Indictment charges conduct during a 14-year period from the time he was 14 years-old. At the age of twenty-eight, he had spent half of his life engaged in criminal behavior specifically related to the computer system to which he now seeks unfettered access, which enabled him to violate the lives of thousands of victims. Even after he created and saved pornographic images of adults and children, he continued to infect computers and exploit people across the globe. His lengthy and persistent criminal conduct demonstrates that he poses both a danger to the community and a risk of flight.

9

**4. The Nature and Seriousness of the Danger to the Community that would be posed by Defendant's Release.**

Durachinsky infiltrated the computers of thousands of people across the world and gained access to their web cameras and microphones so that he could spy on them at their most vulnerable and private moments – all originating from a single computer within the privacy of his own home. As already determined by the grand jury, he produced and saved child pornography. He also caused significant damage to scores of computers and networks. He does not want to be released unless he is sent back to his home and armed with his weapon of choice – computer and Internet usage.

**CONCLUSION**

Durachinsky has offered no change in circumstances to rebut the statutory presumption that no conditions or combination of conditions can reasonably assure his appearance in this case or the safety of the community. This Court should deny Durachinsky's Motion.

Respectfully submitted,

BRIDGET M. BRENNAN
Acting United States Attorney

By: /s/ Daniel J. Riedl
Daniel J. Riedl (OH: 0076798)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3669
(216) 685-2378 (facsimile)
Daniel.Riedl@usdoj.gov

By: /s/ Michael A. Sullivan
Michael A. Sullivan (NY: 2249993)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3977
(216) 522-8355 (facsimile)
Michael.A.Sullivan@usdoj.gov

/s/ Jeff Pearlman
Jeff Pearlman (DC: 466-901)
Senior Counsel
Computer Crime and Intellectual Property
  Section
Criminal Division
United States Department of Justice
1301 New York Avenue, Suite 600
Washington, DC 20005
(202) 579-6543
(202) 514-6113 (facsimile)
Jeffrey.pearlman2@usdoj.gov