UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 1:18 CR 22 | |
| Plaintiff ) | | |
| v. ) | JUDGE SOLOMON OLIVER, JR. | |
| PHILLIP R. DURACHINSKY, ) | | |
| Defendant ) | ORDER | |

I. INTRODUCTION

On June 6, 2023, the court had before it Defendant's Sealed Motion for a Competency Hearing (ECF No. 178) and the United States' Motion for a Competency Evaluation (ECF No. 179). On June 7, 2023, the court issued an order granting the United States' Motion for a Competency Evaluation and denied the Defendant's Motion for a Competency Hearing. On October 4, 2023, the court received a psychiatric report from the Bureau of Prisons, recommending that the court find that Mr. Durachinsky was not competent to stand trial. After a hearing on the matter, the court adopted that recommendation, finding that Mr. Durachinsky was not competent to stand trial (ECF No.184). Specifically, the court relied on the opinion of the clinical staff at the Bureau of Prisons that Defendant suffers from an Autism spectrum disorder that substantially impairs his ability to assist counsel in his defense. Thereafter, the court ordered that Mr. Durachinsky be committed to the custody of the Attorney General, pursuant to 18 U.S.C. Section 4241(d), to determine whether he might, in the foreseeable future, be restored to competency.

On June 25, 2024, the court received the psychiatric report from the Bureau of Prisons, opining that Defendant had been restored to competency, together with a Certificate of Restoration (ECF No. 201). After granting motions for continuances by both the Defendant and the United States, the court held a hearing to determine whether Defendant was restored to competency-- whether he could now assist in his defense. At the hearing, the United States argued that, based on the Report of the Bureau of Prisons, indicating that Defendant had been restored to competency, the court should so find. Counsel for Defendant argued that he had not been restored to competency. Mr. Durachinsky was not in agreement with his counsel. At the hearing the court considered: (1) the first report from the Bureau of Prisons upon which the court initially relied to find that Defendant was not competent; (2) a report by a psychiatrist retained on behalf of Defendant before the court initially referred the Defendant for a competency evaluation and an addendum to that report prepared before the hearing; and (3) the report from the Bureau of Prisons, indicating that the Defendant had been restored to competency. At the hearing, the United States called Dr. Yasmine Abdelaal, a psychologist from the Bureau of Prisons, who works at the Metropolitan Correctional Center in Chicago, as a witness. She signed the report issued by the Bureau indicating that the Defendant had been restored to competency. Counsel for the Defendant called Dr. Allen McConnell, who was retained on behalf of the Defendant before the court's initial referral of Defendant for a competency evaluation.

II. DISCUSSION

A. The Reports

As indicated above, Mr. Durachinsky was evaluated by a psychologist, Dr. Allen McConnell. This was precipitated by concerns his counsel indicated they had with effectively communicating

with him about his case. One of the tests Dr. McConnell administered to the Defendant was the MacArthur Competence Assessment Tool for Criminal Adjudication ("MacCAT-CA"). It involves providing Defendant with a case scenario and then asking him questions about the scenario. The test measures three things: Understanding, Reasoning and Appreciation. Defendant did well on the Understanding measure, as he had minimal or no impairment in this area which tests his understanding of legal proceedings. Defendant also did relatively well on the Reasoning measure, though Dr. McConnell noted, he "often perseverated on minor details of the scenario presented to him. . .". He further noted, "[h]is greatest struggle in this section was demonstrating an ability to identify relevant information that might inform choice regarding plea options in the hypothetical scenario". [Page 36]. Defendant did not do well on the Appreciation measure. This measure changes the focus from hypothetical scenarios to an actual discussion of Defendant's case. According to Dr. McConnell, his score of 5 out of 12 on this measure suggest[ed] he had a clinically significant impairment in his rational understanding of proceedings." When questions were posed to him seeking his perception of others who were similarly situated he became bogged down. An example is how he responded to the question whether "he was more likely, less likely or just as likely as others charged with a similar offense to get a fair trial." [Page 36]. He was not able to select a choice gradient because he became fixated on the words "fair trial." [Page 36]. Dr. McConnell concluded that, on this measure, the Defendant "demonstrated an ability to understand and reason when presented with a fictional case scenario/vignette but his true weakness emerged when he was asked questions related to his own legal situation."(P.37). He also conducted a "competency specific interview," which was consistent with this assessment, stating, "[h]e perseverates on certain details to the point that his central coherence (i.e., ability to see the big picture) is significantly impaired.

His theory of mind (i.e., ability to understand and appreciate the perspectives of others ) is also significantly impaired." [Page 39]. Dr. McConnell concludes that Mr. Durachinsky's "Autism Spectrum Disorder impairs his ability to assist in his defense in many ways". [Among them], [h]e perseverates on specific details that are not always relevant to the point that he becomes argumentative and is not able to engage in a rational discussion". He notes, "[f]or example, he focuses on a certain point of case law and can not move past it or apply it to his current situation. He is also unable to engage in a conversation or answer questions directly." [Page 40]

      The competency evaluation for which I referred the Defendant was conducted at the Federal Detention Center, SeaTac, Washington. The report was signed by Forensic Unit Psychologist, Dr, Cynthia Low. It referenced the fact that Dr. McConnell had performed "a comprehensive evaluation of Autism Spectrum Disorder for the defendant." It also noted the "checklist at the end of his report indicating that Mr. Durachinsky met all the criteria for this disorder". Dr. Low stated, "I concur with this diagnosis" [Page 10]. She further indicated that it would impair his ability to aid in his defense. The report found that, "[o]verall, Mr. Durachinsky "demonstrated an excellent ability to factually understand the nature and consequences of the court proceedings against him, but an inadequate ability to assist counsel in his defense." [Page 14]. This was based on a number of factors. The Administration of the RCAI test to him took 6.5 hours over two meetings. It normally takes one hour. Dr. Low found that, while Defendant was very familiar with court processes and the role of the various actors in those processes, he "demonstrated an inadequate capacity to cooperate and assist counsel in his defense." [Pages 11-12]. Defendant disagreed with his lawyers' assessment of his "becoming fixated on technical arguments regarding his charges, ignoring existing case law, and rejecting legal advice." [Page 12]. However, Dr. Low largely found the assertions of the lawyers


to be well-taken. She stated, he "exhibits highly restricted, fixated interests in case law and definitions related to his charges that are abnormal in intensity and focus." [Page 14] She further stated, "[t]he Defendant spends an inordinate amount of time fixating on and picking apart definitions of various legal terms, despite being told by his attorneys that they do not matter." [Page 14]. Dr. Low concludes her report in regard to competency by stating, "[t]hese fixations result in an inability to see the big picture, an inability to have meaningful discussions with his legal team, and an inability to make decisions about how to move forward with his case. [Page 14]. Consequently, Dr. Low recommended that the Defendant be referred for competency restoration.

The court referred the Defendant for restoration. The Defendant was assigned to the Metropolitan Correctional Center in Chicago for this purpose. On May 30, 2024, the Bureau forwarded its report completed by Forensic Psychologist, Dr. Abdelaal. While it agreed that Defendant has an Autism Spectrum Disorder, Dr. Abdelaal opines that "the symptoms of his diagnosis are not currently rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings or to assist properly in his defense." [page 23]. While at the facility, Defendant was enrolled into two groups: a competency restoration education group and an evidence based treatment group. The competency restoration education group was described as "providing education pertaining to various aspects of legal proceedings. . .". Topics addressed included appropriate "courtroom behavior, evidence and testimony, the role of various courtroom personnel, working with defense counsel, plea agreements, definitions, question and answer sessions, and questions to assess each defendant's knowledge of various topics." [Page 10]The evidence based treatment group, offered in a group setting consisted of 10 modules. The topics addressed, "include recovery strategies, factual information about mental illness, building

support, using medication effectively, coping with stress, problems, and symptoms." [Page 10] Dr. Abdelaal reported that psychology staff members facilitating groups indicated, he "knows legal material well." They also reported that he said he almost had signed a plea deal but did not because of the requirement that it be done "knowingly and intentionally." They also noted he had a tendency to get "lost in the weeds." He was also reported as being "almost condescending to staff." It seemed as if he was "trying to prove staff wrong." Further, he would "latch on to one word or groups of words," that he would talk for an hour in group if allowed, and that during group, he "often 'misses the big picture.'" They also acknowledged that he was sometimes receptive to being redirected and that his rigidity did not occur in every group. But they also said he had a "hard time with redirection because he would be fixated on one thing."

Dr. Abdelaal indicated in a summary of the performance of the RCAI administered by Dr. Low was not included with the copy of the report she received. She did conduct an extensive interview of Defendant, but the only additional testing was Evaluation of Competency to Stand Trial-Revised {ECST-R]. It consists of a "semi-structured interview." It is designed to assess "functional abilities related to competency to proceed."  It has four scales: Rational Ability to Consult with Counsel, Factual Understanding of the Courtroom Proceedings, Rational Understanding of the Courtroom Proceedings and Overall Rational Ability. Dr. Abdelaal indicated that Defendant scored Normal to Moderate Impairment in each of these categories. This represented lowest level of impairment on a scale where findings of Moderate Impairment, Severe Impairment, and Very Extreme Impairment were options. In Dr. Abdelaal's discussion of the interview, she confirmed that he was generally very knowledgeable of the judicial process and the role of the various actors in it. She also recounts the Defendant's description of his relationship with the various attorneys he has

had and the nature of his various disagreements with them as well as his expectations of them. Though it appeared she "heard him out", I saw very little reflected in her discussion that was geared toward challenging his assumptions and expectations regarding his counsel. Though she gave some examples of how he was able to be redirected, such as his views on how his treatment should be undertaken and how the report on restoration should be written, there was little contextual discussion of the kinds of issues raised by his counsel regarding his fixation on words or cases and becoming stuck. Instead, she concludes that any difficulty Defendant has in communicating with counsel is voluntary and because of a Narcissistic Personality Disorder, which is not typically considered a mental disease or defect. She agreed with the diagnosis of Dr. McConnell and Dr. Low that Defendant had a Autism Spectrum Disorder. However, she maintained that, though Defendant had a tendency to fixate on minor details, he could be redirected, though it would sometimes take several attempts to redirect him. She concluded he could effectively assist in his defense and that he had been restored to competency.

Dr. McConnell wrote an Addendum to his initial report after reviewing the report prepared by Dr. Abdelaal. Before doing so, he attempted to interview Mr. Durachinsky again, but he refused. He notes that, upon reviewing Dr. Abdelaal's report, he finds that the underlying information therein supports the conclusion that Defendant has an Autism Spectrum Disorder. Further, that Defendant is still not able to effectively assist in his defense.

### III. THE HEARING

Dr. Abdelaal testified on direct examination, consistent with her report, that Defendant had been restored to competency. She noted that she was not part of a program to restore him to competency, but was charged with determining his competency. However, she received information

from others who were involved in competency restoration. One such group, as detailed in her report, was mainly focused on teaching individuals about the court system. The other group, in which Defendant was enrolled, was for people who had a serious mental illness. Dr. Abdelaal indicated she met with Defendant a number of times and that she also gave him a case assignment. He was able to summarize the case briefly. She indicated he did not go off on tangents and was able to answer her questions. More generally, she indicated that when he got off track over the four months she interacted with him, she was able to redirect him. Sometimes, it was more difficult than others. She noted that other staff noted his tendency to be too focused on some topics and that they had to redirect him, which was sometimes difficult. On cross-examination, Dr. Abedelaal, testified that the treatment Defendant received was not specifically for autism. She stated, "typically, individuals with autism are generally going to be treated with a variety of interventions. It's going to be mostly applied behavioral intervention. Those are and can be offered on an individual basis or in a group basis." [Page 34] She could not say what Bureau of Prison's facility was doing that kind of treatment. She acknowledges that she did not have a portion of Dr. Low's report which talks about his difficulty interacting with his lawyers-spending an "inordinate amount of time fixating and picking apart definitions of various legal terms despite being told by his attorneys they do not matter. He perseverates on these matters and always returns to them after redirection. . .These fixations result . . . +.in an inability to have meaningful discussion with his legal team . . .". She indicates she would not have commented on these things because he did not appear to exhibit rigid beliefs to her. She did acknowledge that other staff who worked with staff in group reported he could be become lost in the weeds, often missed the big picture and could sometimes be hard to redirect. On redirect, she agreed that none of the 10 modules in the evidence based treatment group were targeted at

autistic people. When asked, "And therapy for autism is , you know, calibrated specifically at autism...", she answered, "[y]eah. That's my understanding. She also acknowledges that though she has worked with people with a variety of diagnoses, including the treatment of autism, she has not had experience to the extent that Dr. McConnell has.

Dr. McConnell iterated that autism is a lifelong condition. The primary treatment for it is individual and group therapy. Though he did not have the opportunity to interview Defendant again, he described his earlier interaction with him. He recounted his interaction with Defendant around the question whether he it was more likely, less likely, or just as likely as others to get a fair trial. He spent a great deal talking about the definition of "fair". He stated he had similar problems with other questions on the competency measure he used.

## IV. CONCLUSION

The court concludes, after consideration of all the reports, testimony of the witnesses, and the arguments of counsel that Mr. Durachinsky has not been restored to competency. I have no reason to question my original determination, after consideration of the reports of Dr. Low and Dr. McConnell , that Defendant was not competent to assist in his defense. He appears to be having the same difficulties in this regard now as he had before. It is true that Dr, Abedelaal's interaction with Defendant is more recent than that of Dr. McConnell's. But, he and Dr. Low were very specific in terms of the impediments they saw to Defendant's effectively interacting with counsel. Therefore, Dr. McConnell was in a good position to review Dr. Abedelaal's report to see if the traits he and Dr. Low witnessed in Defendant were still there. I conclude that the comments that the group leaders made about their interactions and observance of him is entirely consistent with the original diagnosis of Dr. McConnell and Dr. Low. They described a Defendant acting as if he is smarter they are,

missing the big picture, fixating on things, and getting lost in the weeds. Sometimes he can be redirected, but redirecting is very difficult. The treatment he received was not sufficient to overcome this. This may, or may not have been, because the treatment was not specifically directed at autism.

There has been no question that Mr. Durachinsky is a very intelligent man. He clearly understands the court system and the role of the various persons in involved in it. There is no surprise that he would talk to others being detained about the law and to give his opinions on matters pertaining to them. It would be no surprise that he would indicate that he has knowledge of cases. The only issue is if can he is able to assist in his own defense. More specifically, has he been restored so that he will no longer exhibit the traits that made it impossible to assist his lawyers. Dr. Low summarized them on page 14 of her report: "Specifically, he exhibits highly restricted, fixated interests in case law and definitions related to his charges that are abnormal in intensity and focus." And, she gave examples. She then gave further explanation. She concluded that, "[t]hese fixations result in an inability to see the big picture, an inability to have meaningful discussions with his legal team, and an inability to make decisions about how to move forward with his case." It does not appear that Dr. Abedelaal's interaction with Defendant, including her interaction around a case assignment, was sufficient to evaluate how he would now interact with counsel around the issues that he need to address with counsel to move forward. The other information in her report confirms that, consistent with the reports of Dr. Low and Dr . McConnell, the Defendant is still not competent to stand trial.

The court finds Defendant has not been restored. However, the court is of the opinion that he can still be restored in a reasonable period of time. Dr. Low said in her report that his prognosis is guarded because Autism Spectrum Disorder is life-long. However, his level of severity is mild.

Dr. Abdelaal acknowledged that therapy for autism should be "calibrated specifically at autism." Dr. McConnell, who has had extensive experience working with people on the Autism Spectrum, indicated there are various therapy models to treat people who are diagnosed with the Disorder. He indicated the group therapy and individual therapy are both utilized. Cognitive behavioral therapy is a treatment model that has been utilized. But, as concluded by Dr. McConnell, the kind of issues involving rigidity of thinking as experienced with Defendant may be addressed with therapy and treatment.

The court does not opine that the Bureau of Prison's efforts to restore Defendant had no effect. But, the generalized programs were not sufficient to restore Defendant to competency. The court has reason to believe that an additional period of restoration which involves some therapy aimed at the autism diagnosis has a substantial likelihood of restoring Defendant to competency.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

November 12, 2024