<pre>
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        Case No. 1:18-cr-0022-SO-1
                                      Cleveland, Ohio
 4             Plaintiff,             Wednesday, November 13, 2024
                                      10:55 a.m.
 5        vs.

 6   PHILLIP R. DURACHINSKY,

 7             Defendant.

 8
                        TRANSCRIPT OF PROCEEDINGS
 9           BEFORE THE HONORABLE SOLOMON OLIVER, JR.
              SENIOR UNITED STATES DISTRICT JUDGE
10

11   APPEARANCES:

12   For the Government:        Matthew W. Shepherd
                                Assistant United States Attorney
13                              801 West Superior Avenue
                                400 U.S. Court House
14                              Cleveland, Ohio   44113
                                216-622-3600
15

16   For the Defendant:        Darin Thompson
                                Christian J. Grostic
17                              Assistant Federal Public Defenders
                                1660 W. 2nd Street, Ste. 750
18                              Cleveland, Ohio   44113
                                216-522-4856
19

20

21
     Official Court Reporter:  Heidi Blueskye Geizer,
22                              Certified Realtime Reporter
                                United States District Court
23                              801 West Superior Avenue
                                Cleveland, Ohio   44113
24                              216-357-7092

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
</pre>

1      MORNING SESSION, WEDNESDAY, NOVEMBER 13, 2024  10:55 A.M.

2                    THE COURT:  Good morning.  Will counsel for

3      the United States introduce themselves for the record.

4                    MR. SHEPHERD:  Yes.  Good morning, Your Honor.

5      Matthew Shepherd on behalf of the United States.  Also with

6      me at counsel table is Special Agent Sean-Paul Mauro, Your

7      Honor.

8                    THE COURT:  Thank you.

9                    MR. SHEPHERD:  Good morning.

10                   THE COURT:  Good morning.

11        Will counsel for defendant Philip R. Durachinsky

12     introduce themselves for the record.

13                   MR. THOMPSON:  Good morning, Your Honor.  To

14     my right is Philip Durachinsky, and to his right is

15     co-counsel Christian Grostic.

16                   THE COURT:  Thank you.

17        As the parties know, and counsel, I had under

18     advisement from the date of our last hearing the issue of

19     whether Mr. Durachinsky had been restored to competency as

20     found by the Bureau, or whether he was not restored.

21        It's a very difficult issue, and I actually had, as I

22     indicated before, never had this particular issue before in

23     the 30 years I've been on the Court.  In fact, I don't

24     remember having sending anyone for restoration before in 30

25     years, so it is very difficult.  Also, I had to try to make

1    the best decision I could in a context that's complicated.

2          Mr. Durachinsky's case started in 2018, and so I don't

3    need to tell anyone that we're in 2024 now.  There are a lot

4    of things that have happened and transpired during that

5    time.  And so I am not suggesting there's any one thing at

6    all that has caused the delay, but it is a complex case.  We

7    are on the third set of attorneys, and there have been

8    multiple issues.

9          So I took some time, as you see, trying to decide how

10   I should come out on it.  I just issued the order late

11   yesterday afternoon.  So I delayed coming out here this

12   morning -- we were to start at 10:30, and it's 11:00 --

13   because I wasn't sure whether Mr. Durachinsky would have had

14   any opportunity to know or read about it.  And I thought it

15   made sense that to at least allow him some limited amount of

16   time to digest that.

17         And you know, I understood his position that he felt

18   he was competent, that he was prepared to move forward.  And

19   I've acknowledged many times the difficulty of having

20   counsel who feel that they were ethically obligated to raise

21   the issues with the Court to be in a position that's not the

22   same as the defendant they're representing.  And so that is

23   no criticism at all, but that complicates the matter.

24         I wrote the order, but I'll just say a few words.  I

25   thought that, as you can tell from the order, the person who

1      said he was restored, while she's had quite a number of

2      opportunities to interact with Mr. Durachinsky, didn't seem

3      to have interacted with him, I thought, around the kinds of

4      issues that we have that we've been talking about in a

5      substantial way as I think the other psychologist did.

6           At the Bureau, as everybody knows, they had two groups

7      that he was in, and the people in the groups made certain

8      comments when they were having their sessions about him, and

9      they were working with him day to day.  The person, the

10     psychologist who did the ultimate evaluation said she was

11     not part of restoring, but she was part of determining

12     whether he was competent.

13          When I look at the other instruments by the other

14     psychologist that were specific to looking at the court

15     scene and ability to interact with counsel, it seems like

16     they were more focused on the kinds of issues that had been

17     brought to my attention, and the psychologist for the Bureau

18     seemed like a good therapist, is the best way I can put it;

19     that she was listening and hearing him, hearing him out.

20          And she could describe all of the difficulties he's

21     having with counsel, his view of why he was having them, and

22     he could logically explain to her why he thought they

23     weren't doing certain things they should do, and so forth,

24     and so I thought she did an excellent job of listening to

25     him.

1          I didn't see a challenge there.  I didn't see her push

2     there.  I didn't see her try to get to create a scenario

3     that would be similar to what the lawyers would face, and

4     that's really what's kind of the deciding factor.  I don't

5     mean to suggest that when he was there, Mr. Durachinsky was

6     there, that there was nothing that was helpful in terms of

7     the issues he's facing, so I don't want to be misunderstood.

8          I can't say that the programs that they were offering

9     -- but neither of the programs they offered him, as far as

10    we know, had an autism component, and I didn't see anything

11    to suggest that they had a pull-out from the group to try to

12    address those kinds of things.  They seemed more generic.

13         It seems like a thought of things you could learn

14    about mental illness in the one group and those kind of

15    things and how to cope with some of those, some of those

16    were not pertinent to Mr. Durachinsky, and I think he's made

17    me aware they weren't pertinent in letters he's filed with

18    me.

19         And the ones devoted to the Court process appeared to

20    be devoted to a lot of things that we know Mr. Durachinsky

21    is good at already.  Mr. Durachinsky is a highly-intelligent

22    man.  He understands the court system well.  He doesn't have

23    no problems in that.  He understands what all the actors in

24    the court system, what their role is and what they should

25    do.  There is no question about that.  So that's never been

1    an issue, and I think he's made that point in his papers.

2    That's never been an issue.  The only issue really relates

3    to this one component of assistance of counsel.

4         Now, there comes a time when enough is enough, and so

5    the question is when is that.  What is reasonable.  And I

6    concluded that while we've gone for a long period of time

7    that it is reasonable to give one more try to this issue.

8    And I saw some things in the reports of the psychologist

9    that suggested to me that he could be restored.  Maybe

10   there's some progress that has been made already, but he

11   could be restored.  But if not, the reasonable period of

12   time runs out pretty soon.

13        That's how I assess the situation, it is to be seen

14   whether he can be restored in a reasonable period of time.

15   I see suggestions that he could be restored, but I'm just

16   repeating, the reasonable period runs out pretty soon.

17   That's my feeling.

18        And so that's where I was and that's where I am on it.

19   I understand decisions have consequences, and it's not that

20   as a judge I don't feel or understand at all the agony and

21   the upset that Mr. Durachinsky has shown.  That's not it, I

22   do; but I sat down and I just had to decide what I thought

23   was best.  So that's where I am on it.

24        Now, I'm clearly open to comments.  I made a decision

25   about this, but if you see issues around it, legal issues,

1      speedy trial issues, or anything, I want you to let me know,

2      because like I said before, this is the first time I've done

3      a restoration, sent for a restoration, and certainly the

4      first time I've decided a person needed to go back.  So I've

5      looked at it as closely as I can for now, but I don't

6      pretend that I know all there is to know about this.

7           And so that's why I want to receive your feedback,

8      because if there are adjustments I need to make in how I've

9      ordered things, and so forth, then I'd like to know that so

10     that I can make those adjustments in an order.

11          So let me go first to the United States.

12               MR. SHEPHERD:  Your Honor, obviously when we

13     had the hearing, Your Honor, we advocated on behalf of a

14     finding or arguing for a finding that Mr. Durachinsky had

15     been restored.  We've reviewed your opinion.  Although we

16     may disagree with your ultimate conclusion, Your Honor, I

17     don't have any further comment on the logic you used or any

18     criticism of it, Your Honor.  It is certainly within your

19     discretion and appears to be the result of a lot of

20     consideration on your part of the arguments and the

21     evidence.  So from that standpoint, Your Honor, we certainly

22     respect the Court's decision and understand it.

23          So I don't have any I guess feedback on that respect

24     other than, Your Honor, just to note that we believe this is

25     one of the options within your discretion under the statute,

1    and you've exercised it, and we will act accordingly.

2         The one thing I guess I would request, when the Court

3    initially found Mr. Durachinsky to be incompetent after -- I

4    guess at the request of defense counsel the Court issued an

5    order to the effect of directing BOP to designate him to a

6    facility within a certain time frame, or the Court indicated

7    it would consider a bond motion.

8         The last time around BOP was very prompt in

9    designating him, so we would not oppose a similar order from

10   the Court, and I'm sure defense counsel will want that, or

11   more possibly.  I'm not sure.  But I think that would be

12   appropriate as well because of the length of time this case

13   has been, that essentially a repeat of what you issued last

14   time around we would think would be appropriate, Your Honor.

15                  THE COURT:  Thank you.

16                  MR. SHEPHERD:  Because our only concern right

17   now is just to get this done as promptly as possible.

18                  THE COURT:  I understand.  Thank you.

19        Mr. Thompson.

20                  MR. THOMPSON:  Yes, Your Honor.  The defense

21   is requesting that the Court issue a similar order to last

22   time.  We're suggesting a 30-day period.

23        I know Mr. Durachinsky also would like permission to

24   address a number of issues he wants to put on the record,

25   including a request that any interviews with psychologists

1      be recorded in some fashion.  But other than a 30-day

2      window or deadline for the BOP for him to be in BOP custody,

3      nothing else from the defense.

4           Thank you.

5                THE COURT:  All right.  Okay.  I appreciate

6      the --

7                MR. THOMPSON:  I'm sorry.  Your Honor, Your

8      Honor's order indicated a two-month progress report will be

9      given.  Will that be shared with counsel?

10               THE COURT:  I don't see why not.

11               MR. SHEPHERD:  No objection to that, Your

12     Honor.

13               MR. THOMPSON:  Thank you, Your Honor.

14               THE COURT:  Okay.  I appreciate the comments

15     of both counsel.  I'm trying to see whether there are things

16     around what I've written should be adjusted.  I think I

17     appreciate you know I made a decision, and that's what

18     happens when you've got to make a decision.  There are two

19     different sides on it.  And when you do, you know, it's not

20     going to be something that both sides embrace or have

21     embraced, but I appreciate the comments.

22          In terms of whether interviews will be recorded, I

23     don't know whether that's good practice in terms of what

24     psychologists do, or what have you.  I think we can make the

25     Bureau aware of that, but you know, I don't feel I'm in a

1   position to put on an order right now requiring that any

2   time there is an interview is made -- I know it would be

3   highly unusual, and I also know that I think some

4   psychologists would think that would interfere in what

5   they're doing, the ability to candidly work through issues,

6   and so forth.  I'm pretty sure that a lot of them would have

7   difficulties with that.  It would not be the norm for sure.

8        So they can be made aware of his request and you can

9   make them aware of it also, Mr. Durachinsky, but I don't

10  think it's likely to be on it because I think they're going

11  to feel that that's an interference with their ability to

12  perform the services they are retained to -- it starts out

13  by I think a suggestion of lack of trust, and I'm not saying

14  you should trust them, I'm just saying that's kind of the

15  mood that's being set with the person that's working with

16  you.  And that means that it could hamper the relationship

17  and the ability of the people who are performing the

18  services to do their job.  So that's my comment.

19       I'm going to allow you an opportunity to speak,

20  obviously as you are at trial and this affects your life.

21  Now, I'll tell you like I've told you in the past, it is not

22  unlimited, but I understand that you're the defendant,

23  you're the person who's been charged.  You're the person

24  whose life is most directly affected by all of this.

25       So I've allowed you the opportunity to speak.

1   Normally lawyers are speaking for you, but I understand the

2   circumstances.  But I made a decision overall about what I'm

3   going to do.  I'll be honest with you, I don't anticipate

4   changing the basic decision, but just like with counsel, you

5   know, my ears are always open because I'm always trying to

6   do the best I can do.  If I were to hear something that I

7   thought would directly affect what I'm trying to do and make

8   it more effective or be fair, or something to that extent, I

9   won't rule out those thoughts in the beginning, but it is

10  not a chance to fully reargue the position which you made

11  very clear the last time that you were not in agreement,

12  that you felt you were competent and you felt you could go

13  forward.

14       I fully understood your position, and so you may go

15  ahead.  I know you say you want to make a record, and that's

16  what you often say.  I don't know whether you are making a

17  factual record, a legal record, or what arguments you want

18  to make, but I'll give you some limited opportunity.

19               THE DEFENDANT:  Yes, Your Honor.  I guess I'm

20  going to limit my concerns to two main topics here.

21       One is throughout all these psychological evaluations

22  I do feel like there hasn't been anyone who's really looked

23  into whether or not I could be correct or whether or not I

24  am actually rational in being concerned about things.  And

25  so what I'm concerned about is that with this, you know,

1    effective fourth evaluation now, I'm concerned that no one

2    is going to look into specifics; but that is part of your

3    order is for them to look into it or at least to push back

4    against what I bring up, but I'm concerned because the

5    psychologists throughout they don't have necessarily legal

6    experience, and so I'm concerned that if -- suppose that my

7    attorney is incorrect about certain things and that I am

8    justified in rejecting advice, the psychologist is not in a

9    position to make a legal decision on that.

10         And part of the issue is that I'm put in a position

11   where I can either refuse to agree with them and they will

12   not on their own bring up case law in order to try to change

13   my beliefs, or otherwise -- well, I'm just worried that

14   because psychologists are not trained in law I don't see how

15   they're going to effectively change beliefs that are tied to

16   case law --

17              THE COURT:  You know what? I'll let you say

18   more.

19         I don't see their job as to look through all of the

20   disagreements you had with counsel and determine whether you

21   were right on most of them or not right on most of them, or

22   what the scorecard is.  That's not it.

23         I just mean it's not like to come back and say, you

24   know, Mr. Durachinsky was wrong on five times or his lawyers

25   were wrong on, you know, two or three times, or something

1     like that.  It's really more the interaction pattern around

2     things when you encounter a disagreement and the question

3     becomes it's not like a one-time thing, it's more like when

4     you encounter disagreements whether there is some

5     flexibility, whether there is some chance to come to some

6     conclusion so you can move forward.

7          It is not like the lawyers should run roughshod over

8     you or that they should get their way, as you're the

9     defendant.  That's not it.  So I'm not asking them to keep a

10    scorecard, I'm just saying to ask you to write down, for

11    example, a case -- you're very good at that.  Writing down,

12    go ahead and summarize a case and you have a chance to write

13    it down, that's an exercise that I think you would do well

14    at.

15         I'm not surprised when they say you were around with

16    other inmates or other people there and that you were

17    talking to them about the law, and that maybe you were

18    advising them about the law.  That's consistent with your

19    background and your strengths, and so forth.  That's not it.

20         That's all I'm saying, that psychologists have skills,

21    they have training, they have techniques where they should

22    be able not to bring up everything that happened in your

23    case, but to replicate the kinds of circumstances that you

24    encounter with lawyers, and to be able to make some judgment

25    about whether they're interacting with you, whether -- not

1    whether you are always right or wrong, or whatever, but

2    whether you are showing the flexibility that's needed,

3    whatever the decision is to be made.

4         Nobody said you have to enter a plea or go to trial or

5    what the outcome should be, but you have to be able to move

6    and you have to be able to move in the context of working

7    with lawyers.

8         So that's never it.  It's never been about whether

9    Mr. Durachinsky must go to trial or whether he must enter a

10   plea, or any of that.  It's just been a situation where you

11   can move toward some resolution, and the question would be

12   whether or not the things that are reflected in the

13   examinations by psychologists suggest that you might have

14   trouble not just working with the lawyers, but making

15   decisions about what you're going to do, and about if you're

16   in trial how you might assist if they're going to have to

17   carry you through a trial.

18        You're going to have to take the stand or not take the

19   stand.  They're going to have to make decisions about

20   examinations of witnesses or not examination of witnesses,

21   and the question is how can that interaction go unless

22   there's some flexibility there.

23        I am not here to put you down in any way.  And I'm

24   just saying you have to take it the way you feel it, but I'm

25   not here to do that.  I'm not here to make judgments about

1    you as a human being.  I'm telling you that's not what I'm

2    about.

3         I am just trying to make sure we get to a point where

4    we know you can move ahead, or if you can't then the

5    reasonable period is over, and then the government will have

6    to consider whether it's going to drop the charges or we'll

7    have to see whether civil commitment is necessary, or

8    whatever, but we're not in that stage yet.  I decided we

9    were not in that stage.

10        But I cut you off, now go ahead.

11            THE DEFENDANT:  Yes, Your Honor.  I still have

12   concerns though over when I go for this treatment I don't

13   know what it is that -- what specific things I should

14   change.  I feel like I have assisted counsel, I have made

15   conscious decisions to reject plea offers.  I assisted

16   previous counsel and in cross-examining witnesses during our

17   suppression hearing.

18        And so again, it seems to me like the only thing I

19   could do to be found competent would be to just acquiesce to

20   whatever my attorney says, even if I believe they're wrong

21   and even if I have evidence that shows that they're wrong.

22   So I have concerns though that the Court will be in a

23   position to make a more adequate decision over whether or

24   not I've been restored when this treatment is done with.

25        Let me move on, because I have another category of

1    concerns.  So like I do understand though that I do need to

2    be now moved to a suitable facility again.  I've already

3    raised issues with the Court, particularly in my letter

4    regarding speedy trial and conditions of detention.

5         This does call into question issues of property again.

6    Although now I have significantly less property given that

7    all of my other property was disposed of, I have started

8    accumulating paperwork from both personal projects as well

9    as things with this case, and an ongoing FOIA request and a

10   tort claim, and all of these transfers into the Bureau of

11   Prisons and out of the Bureau of Prisons, each time I'm

12   unable to take paperwork or property with me to the BOP and

13   to bring it back with me.

14        And so this causes issues where, for instance, I

15   appreciate that while I was in Chicago I was able to obtain

16   books, but then when I was moved out of there I had to mail

17   them out.  And when I go to whatever suitable facility I go

18   to this time I'm again unable to mail in those same books,

19   so I would have to try to find different books.

20        I'm just concerned with all these issues with moving

21   to and from facilities, and I'm not convinced that this

22   treatment, that soon this case will be resolved once this

23   treatment has ended.

24        And so I'm just pointing out to the Court, I know

25   we're not there right now, and if the Court does give the

1    government a limited time to move me it would not be an

2    issue right now, but I do want to keep in mind that I still

3    believe that my counsel should challenge my detention

4    because I do believe it's an ongoing issue.

5        Had I been out on bond, you know, since a while back,

6    I wouldn't have sat for six months in Mahoning County, I

7    wouldn't have had my property thrown out.  I could leave

8    my -- I could maintain custody of my own property, and then

9    when the Bureau of Prisons or suitable facility is done with

10   me I could get back to my property.

11       So going forward, I feel like after this treatment is

12   over we may have similar issues, where my counsel again

13   wants me reevaluated and it may take a number of months.

14   Again, I do believe my case law I wrote about, which I

15   attached in the letter to you which was from Chicago, that

16   was all over due process violation from prejudicial pretrial

17   detention, and I believe that only applies and even more so

18   as this case drags on.

19       So that's something that I'm going to become more

20   aggressive about when I come back, is any delays -- well,

21   any delays with getting me to a suitable facility I'm going

22   to heavily criticize, and then when I am done with this

23   treatment, further delays in the case, I'm going to keep

24   raising the issue that my counsel is not challenging

25   prejudicial detention.

1      And then along with that though there is still the

2    question of what to do with what property I currently have

3    at Mahoning.  I'm assuming that this will be similar to the

4    last two trips to the BOP, where we could do an order to

5    have Mahoning County hold my property again so that there

6    aren't issues with returning the property when I arrive

7    back.

8      I would be okay with that, because I'm assuming after

9    this last time Mahoning will probably take better care of

10   what little I have.  But I am just raising that as an issue

11   with the Court, that this constant transferring to and from

12   facilities is an issue.  And all these property issues are

13   related to policies designed to prevent contraband from

14   coming into the facility, which I don't think is

15   particularly relevant for me.

16      So just going forward though --

17            THE COURT:  All right.  I know you like to

18   make your record, and I'm giving you a chance to do that.

19   Of course you can't, you know, part of what you want to do,

20   you said you want to hold a hammer over the lawyers' heads

21   and the Court's head, and that's okay.  You will be doing X

22   and Y going forward, and you're going to challenge this and

23   challenge that.

24      Well, I can't say anything about that, because those

25   are your thoughts you want to get out.  And so you know,

1    you've told me what you feel and what you may do, and how

2    you may challenge it.  You know, I guess I hear you.  I hear

3    you.  I don't think you're expecting me to do anything about

4    it, but I think -- but I do hear you.

5         Mr. Thompson, what about an order that we put on

6    regarding property? Do you think we should put another one

7    on?

8                   MR. THOMPSON:  Yes, Your Honor.  I don't see

9    any reason not to try to do the same order as before, and

10   hopefully this time they won't throw his things out three

11   days before he gets back.

12                  THE COURT:  Yeah.  That was distressing that

13   the order wasn't followed and that someone saw fit to throw

14   his stuff out.  So obviously I wasn't very happy with that,

15   but --

16                  MR. THOMPSON:  I appreciate it, Your Honor.

17   Thank you.

18                  THE COURT:  Okay.  So what I would anticipate

19   doing is putting on two orders of the type we put on before,

20   one having to do with designation and the other having to do

21   with maintaining his property, and that's what I will do.

22        I'll just close out, Mr. Durachinsky, by saying I'm

23   not saying you never have any good ideas, I'm not saying

24   you've been wrong on every conclusion you've reached about

25   the law, or anything like that.  That's not what I'm saying.

1          But don't view it, like you say -- well, I think you

2     do look at it kind of like a scorecard.  "I think they've

3     been wrong a lot" -- I think that's what I hear you saying,

4     the lawyers you have -- and "I think I've been right a lot,

5     and I can't get on with dealing with them because they keep

6     coming up short."

7          That's kind of what I'm hearing.  And you're saying

8     how else will people know if they don't know the law as to

9     whether you being right and their being wrong, and of course

10    I'm not here to interfere in the lawyer-client relationship

11    to that extent to say bring me your disputes, disagreements,

12    and I'll referee, and I'll tell them, "No, you're wrong,

13    he's right.  Let's go."

14         That's not a role a judge can play.  It's an

15    overall -- it's the overall circumstances that we're talking

16    about, and it sounds like you're saying this is -- the way I

17    feel before is the way I feel now, I am not going to do it

18    any different when they send me again.  I think I heard you

19    say something like that almost.

20         Well, I think we'll just see, because you have been

21    diagnosed with a particular disorder, and all of the

22    psychologists have agreed on that, even the one that said

23    you were restored.  They all agree.  And they all agree that

24    there are certain symptoms, every person is different, it's

25    a spectrum.  And psychologist Lowe said that yours was mild.

1    She said that.  I don't know if the others agree with that,

2    but that's what she said.

3        And but they all agree that there are certain

4    symptoms, characteristics, traits that are manifested.  This

5    is not a put-down, this is not a put-down.  And the question

6    is, are they manifested, and if so, are there ways to

7    ameliorate them so that they don't serve as an impediment to

8    doing this particular task.

9        We're just talking about one task.  We're not talking

10   about your whole life.  We're talking about assisting

11   counsel in your defense.  That's all we're talking about.  I

12   am not making broad generalizations about interactions in

13   the rest of your life, or any of that.  I am not making any

14   generalizations about whether that affects anything else,

15   that's all.

16       And it's that aspect -- I think you understand

17   intellectually that's the aspect that's at issue.  So let's

18   see how it goes, but I was optimistic, I didn't want to say

19   you couldn't be restored once I reached the conclusion,

20   because I think you are quite smart.  I think that you've

21   got a lot of it absolutely down pat in terms of

22   understanding the legal system and all that.

23       So I don't want to conclude that you couldn't be

24   restored because I was looking to see whether they were

25   saying there were therapy or group therapy or whatever that

1    could be of assistance, and I concluded that it was worth

2    exploring.

3          So that's all I have.  Thank you, all.

4               DEPUTY CLERK:  All rise.

5                    -   -   -   -   -

6          (Proceedings adjourned at 11:34 a.m.)

7

8

9

10                  C E R T I F I C A T E

11

12          I certify that the foregoing is a correct transcript

13    from the record of proceedings in the above-entitled matter.

14

15               /s/Heidi Blueskye Geizer_____December 10, 2024

16               Heidi Blueskye Geizer                    Date
                 Official Court Reporter
17

18

19

20

21

22

23

24

25